# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DAVID WADE,

      Petitioner,                        **CASE NO. 2:09-CV-632**
                                             **JUDGE ALGENON L. MARBLEY**
      v.                              **MAGISTRATE JUDGE E.A. Preston Deavers**

MICHAEL SHEETS, WARDEN

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the instant Petition, Respondent's *Return of Writ*, Petitioner's *Traverse*, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Appellant, David E. Wade, was indicted on aggravated burglary, rape, kidnapping, aggravated robbery, theft of a motor vehicle, theft of property valued over $500, receiving stolen property, failure to comply with an order or signal of a police officer and possession of cocaine for a total of nine counts, many of which contained firearm specifications. After a jury trial, appellant was found guilty on all counts, except the aggravated robbery, and was acquitted of the firearm specifications. The trial court imposed a sentence of ten years for Count One, aggravated burglary; ten years for Count Two, rape; ten years for Count Three, kidnapping; eighteen months for Count Five, theft of a motor vehicle; twelve months for Count Six, theft of property valued over $500; twelve months for Count Seven, receiving stolen property (motor vehicle); eighteen months for Count Eight, failure to comply with an order or signal of a police officer; and twelve months for Count Nine, possession of drugs. The trial court merged Counts Two and Three, and the sentences for Counts One,

Five, Six, Seven and Eight were ordered to be served consecutively with each other. The trial court held a sexual predator hearing and adjudicated appellant a sexual predator.

***

The charges against appellant arose out of events beginning on August 20, 2002. The first witness to testify at the trial was Candice Baugh ("Baugh") who stated that, on that date, she lived in an apartment near The Ohio State University campus. Baugh was a student and was working at the Development Office at The Ohio State University Medical Center. She had come home for lunch around 2:00 p.m., and was starting to make lunch when there was a knock on her door. Baugh peeked out her window and asked the man standing at her door what he wanted. Appellant asked if a different person lived there and then asked to use her telephone. Baugh opened the door slightly and gave him the telephone. When he was finished, she again opened the door slightly but, this time, appellant pushed the door open and entered the apartment. He pulled a silver gun out of his bag and told her to "shut up" and to take her clothes off. (Tr. at 64-65.) He told her to lay down on the living room floor and he laid on top of her and had intercourse. Afterwards, Baugh asked if she could put some clothes back on and she put on her shirt. He told her to pack up her laptop computer and he took her purse, cell phone, cordless phone and car keys. Appellant then left in her Honda Prelude. Baugh put on her pants and ran to her neighbor's apartment, and called the police and her stepfather. Later when the police showed her a photo array, she immediately identified appellant.

Bryan Briskey, Baugh's neighbor, testified that Baugh seemed disoriented and looked as if she was fighting back tears when she came to his apartment to use the phone, explaining that she had just been raped and had her car stolen. Chip Thompson, a Columbus Police Officer on a bicycle unit, was the first to respond and stated that Baugh's demeanor when he talked to her was that she was very upset, crying, agitated and a little confused.

Heather Camille Jones ("Jones") testified that she lived in an apartment across the street from Baugh. Jones was leaving to go to the store and noticed a man standing on the porch of Baugh's apartment. She was gone for approximately 20 to 30 minutes and, when she returned, the police were there. On September 6, 2002, she was shown a photo array and identified appellant as the man she saw,

but she was not positive it was him. Jones did not remember appellant carrying a bag or backpack, but she stated she might not have seen it because she only saw his left side.

Cheryll Minke ("Minke"), the Sexual Assault Nurse Examiner ("SANE") from Riverside Methodist Hospital who examined Baugh, found no physical trauma but did find redness on Baugh's cervix. She explained that redness is usually from some trauma or something that has occurred to the cervix and is consistent with recent vaginal intercourse and consistent with the history that Baugh related to her. Minke wrote "acquaintance" on the hospital exam form in response to the relationship of assailant to patient; however, the doctor who examined Baugh dictated notes that stated Baugh was assaulted "by a male that is not known to her."

Elderberry Clodfelter ("Clodfelter") testified that, while standing on a street corner, he was approached by a male driving a blue Honda Prelude who was looking for drugs. Clodfelter got inside the car and appellant gave him a cell phone in exchange for drugs. Appellant then reached behind Clodfelter's seat and pulled out a chrome gun and wanted all Clodfelter's money. Clodfelter was able to run from the car. Clodfelter attempted to sell the cell phone, which was later identified as Baugh's phone. Clodfelter identified appellant out of a photo array, identified him in court and identified a picture of Baugh's car as the one appellant was driving.

On September 2, 2002, a Columbus police officer saw Baugh's Honda traveling on Wilson Avenue and started to pursue it. After a high-speed chase, appellant hit another vehicle at the intersection of Broad Street and James Road. Appellant exited the car and ran. The police officer caught appellant, who continued to struggle and had a baggy of crack cocaine in his hand.

Appellant testified in his own defense. He stated that he met Baugh at the Heritage Festival where they exchanged telephone numbers, but he lost her number. On August 20, 2002, he was in Baugh's neighborhood, looking for his cousin's apartment when he saw her drive by him and wave. He went to her apartment and she let him inside. They began talking and kissing, and had sex on the couch. He did not have a gun or weapon. While Baugh took a shower, he stole her purse, cell phone, computer and car. He sold the cell phone to Clodfelter for money, not drugs, and he sold the laptop computer. On

September 2, 2002, he was driving Baugh's car, attempted to flee from the police and had an accident.

*State v. Wade*, No. 03AP-774, 2004 WL 1688434, at *1-3 (Ohio App. 10th Dist. July 29, 2004).

Petitioner filed a timely appeal in which he raised the following assignments of error:

1.    The court of common pleas erred and deprived Defendant-Appellant of his right to a speedy trial under R.C. 2945.71, U.S. Const. Amend. VI and XIV, and Ohio Const. art. I, § 10 when it denied his pretrial motion for discharge for failure of the prosecution to bring him to trial within the period provided by law.

2.    Defendant-Appellant was denied his right to due process and a fundamentally fair trial under U.S. Const. amend. V and XIV and Ohio Const. art. I, § 16 as a result of the prosecutor's improper and/or misleading questions and remarks during cross-examination and/or closing arguments to the jury in the following respects: (a) the prosecutor used the fact of defense counsel's employment of a non-testifying DNA consultant as the basis for accusing Defendant-Appellant of changing his defense to the rape, kidnapping, and burglary charges from one of misidentification to one of consent; (b) the prosecutor cited the absence of any negative testimony regarding the prosecuting witness's chasteness or character as a basis for unfairly bolstering her credibility in the eyes of the jury; (c) the prosecutor urged the jury to consider the reporting officer's opinion regarding the truthfulness of the prosecuting witness's report of a rape as evidence of Defendant-Appellant's guilt, and (d) the prosecutor inflamed the passions of the jury by calling Defendant-Appellant a "terrorist."

3.    Defendant-Appellant was deprived of his right to be present and to the presence and assistance of his counsel during a critical stage of his jury trial, and his right to due process and a fundamentally fair jury trial under the U.S. Const. amend. V, VI and XIV, Ohio Const. art. I, §§ 5, 10 and 16 of the Ohio Constitution, and Crim.R. 43(A) as a result of: (a) his exclusion from the proceedings involving the preparation and submission of responses to the jury's questions, (b) the absence of counsel during those proceedings, (c) the irregularities in the procedures employed by the court of

4

common pleas in responding to the jury's questions, and (d) the incorrect, incomplete, and/or confusing responses to those questions.

4.    The entry of separate convictions and consecutive prison sentences for two counts of theft and one count of receiving stolen property involving the same victim and the same occurrence contravened R.C. 2913.61(C) and R.C. 2941.25 and subjected Defendant-Appellant to multiple punishments for the same crime in violation of his rights under the Double Jeopardy Clauses of the U.S. Const. amend. V and XIV and Ohio Const. art. I, § 10.

5.    Defendant-Appellant was denied his right to the effective assistance of counsel guaranteed to him under U.S. Const. amend. VI and XIV as a result of the following omissions by trial counsel: (a) failure to seek reopening of the hearing on the pretrial speedy trial motion based on additional information disclosed for the first time at trial, (b) failure to challenge testimonial and documentary opinion evidence regarding the veracity of the putative victim's account of rape, (c) failure to object to the improper questions and remarks by the prosecutor that are the subject of Assignment of Error No. 2, and (d) failure to request merger of the two theft convictions.

6.    Defendant-Appellant's convictions for rape, kidnapping, and aggravated burglary are not supported by evidence sufficient to satisfy the requirements of due process under U.S. Const. amend. V and XIV; or, alternatively, are against the manifest weight of the evidence.

7.    The aggregate 26 year prison term to which Defendant-Appellant was sentenced violated his statutory rights under R.C. Chap. 2929 and his right of due process under U.S. Const. amend. V and XIV and Ohio Const. art. I, § 16 for the reason that the record clearly and convincingly establishes that the evidence and the findings and reasons recited by the court of common pleas do not support (a) the imposition of maximum prison terms for each offense of conviction and (b) the consecutive service of those prison terms. In accordance

with App.R. 5(C)(2), Defendant-Appellant states that the aggregate prison term exceeds the maximum prison term for the most serious offense of conviction and moves this Court for leave to appeal his consecutive prison terms pursuant to R.C. 2953.08(C).

8.      The adjudication that Defendant-Appellant is a sexual predator is not supported by the common pleas court's findings and is not supported by sufficient evidence.

*Id.* at *1-2.  On July 24, 2004, the state appellate court sustained Petitioner's third assignment of error, reversed his convictions, and remanded the case to the trial court for a re-trial.  *Id.*

On remand during the second jury trial, appellant sought to prohibit the State from admitting any testimony indicating that he possessed a gun during the commission of these offenses. He argued that allowing such testimony would be inconsistent with his acquittal for aggravated robbery in the first trial because the jury in the first trial determined that he did not possess a gun during the offenses. The trial court disagreed and permitted the State to introduce evidence that appellant used a gun to commit the offenses against C.B. During the second trial, C.B. again testified that appellant forced his way into her apartment and raped her at gunpoint. She also testified that appellant stole her car and a number of other items. Appellant again admitted that he stole items from C.B.'s apartment as well as her car. He also admitted that he fled from the police and that he possessed cocaine when he was arrested. Appellant again denied, however, that he raped C.B and that he had a gun. Instead, he claimed that he met C.B. months before at a festival and that they had consensual sex that day inside her apartment.

The jury rejected appellant's defense and found him guilty of all counts.[FN1] The trial court designated appellant a sexual predator and sentenced him accordingly.

FN1. Because the first jury acquitted appellant of aggravated robbery and determined that he did not use a gun, appellant was not tried for aggravated burglary or any of the firearm specifications in his second trial.

*State v. Wade*, No. 06AP-644, 2008 WL 366143, at *2 (Ohio App. 10th Dist. Feb. 12, 2008).

Petitioner filed a timely appeal in which he raised the following assignments of error:

    1.    COLLATERAL ESTOPPEL BARRED THE ADMISSION OF EVIDENCE ASSERTING THAT APPELLANT POSSESSED AND BRANDISHED A GUN. THE TRIAL COURT'S FAILURE TO EXCLUDE THIS EVIDENCE DENIED APPELLANT HIS RIGHT TO A FAIR TRIAL, DUE PROCESS, AND THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AND VIOLATED THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS AS WELL AS ARTICLE I, § 2, 9, 10, & 16 OF THE OHIO CONSTITUTION.

    2.    THE ADMISSION OF THE GUN EVIDENCE AS OTHER ACTS EVIDENCE VIOLATED WADE'S RIGHT TO A FAIR TRIAL AND DUE PROCESS AND VIOLATED THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENT. IN ADDITION, THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY ON THE PROPER LIMITATIONS OF OTHER ACTS EVIDENCE THEREBY VIOLATING WADE'S RIGHTS TO A FAIR TRIAL.

    3.    THE PROSECUTOR HAS AN OBLIGATION TO SEEK JUSTICE AND TO REFRAIN FROM UNFAIRLY SEEKING A CONVICTION BASED ON IMPROPER EVIDENCE, IMPROPER ARGUMENT AND OTHER MISCONDUCT UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, §§ 2, 9, 10, & 16 OF THE OHIO CONSTITUTION.

    4.    THE REPRESENTATION PROVIDED TO DAVID WADE FELL FAR BELOW THE PREVAILING NORMS FOR COUNSEL IN A CRIMINAL CASE, WAS UNREASONABLE, AND AFFECTED THE OUTCOME IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AS WELL AS ART. I, § 2, 9, 10, & 16 OF THE OHIO CONSTITUTION.

5. THE ADJUDICATION THAT DEFENDANT-APPELLANT IS A SEXUAL PREDATOR IS NOT SUPPORTED BY THE COMMON PLEAS COURT'S FINDINGS AND IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

6. A TRIAL COURT MAY NOT SENTENCE A DEFENDANT TO NON-MINIMUM AND CONSECUTIVE SENTENCES WITHOUT VIOLATING A DEFENDANT'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 AND 16 OF THE OHIO CONSTITUTION. THE DECISION RENDERED BY THE SUPREME COURT OF OHIO IN *STATE V. FOSTER* (2006), 109 OHIO ST.3D 1, IS INCOMPATIBLE WITH THE CONTROLLING PRECEDENT OF THE UNITED STATES SUPREME COURT AND MUST BE REJECTED.

7. THE TRIAL COURT VIOLATED WADE'S RIGHTS UNDER THE EX POST FACTO CLAUSE OF THE FEDERAL CONSTITUTION BY SENTENCING APPELLANT TO A TERM OF INCARCERATION WHICH EXCEEDED THE MAXIMUM PENALTY AVAILABLE UNDER THE STATUTORY FRAMEWORK AT THE TIME OF THE OFFENSE. THE DECISION RENDERED BY THE SUPREME COURT OF OHIO IN *STATE V. FOSTER* (2006), 109 OHIO ST.3D 1, WHICH PURPORTS TO AUTHORIZE THE SENTENCE RENDERED AGAINST DAVID WADE, IS INCOMPATIBLE WITH THE CONTROLLING PRECEDENT OF THE UNITED STATES SUPREME COURT AND MUST BE REJECTED.

8. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION BY SENTENCING APPELLANT PURSUANT TO THE DECISION RENDERED BY THE SUPREME COURT OF OHIO IN *STATE V. FOSTER* (2006), 109 OHIO ST.3D 1, BECAUSE THE HOLDING OF *FOSTER* IS INVALID UNDER *ROGERS V. TENNESSEE* (2001), 532 U.S. 451.

*Id*. at *2-3. On February 12, 2008, the appellate court sustained in part Petitioner's second

assignment of error, in which he asserted that the trial court erred by failing to issue a jury instruction indicating Petitioner's use of a gun could not be considered to establish the force element of rape, as he had been acquitted of using a gun in his first trial, and reversed the judgment of the trial court. *Id.* On April 15, 2008, however, the appellate court granted the State's motion for reconsideration, and reversed only Petitioner's convictions on rape and aggravated burglary, remanding those convictions to the trial court for a re-trial. The appellate court addressed Petitioner's remaining assignments of error, and affirmed his remaining convictions and sentences on kidnapping, robbery, theft, receiving stolen property, failure to comply with an order of a police officer, and possession of cocaine. *Id.* On August 8, 2008, the Ohio Supreme Court denied the State's motion for leave to appeal and denied Petitioner's cross appeal as not involving any constitutional question. *Exhibit 6 to Return of Writ.* On January 9, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *Exhibit 8 to Return of Writ.*

Petitioner subsequently pleaded guilty pursuant to the terms of his negotiated plea agreement to rape. The prosecution dismissed the aggravated burglary charge. The trial court sentenced Petitioner pursuant to the joint recommendation of the parties, to three years incarceration, such sentence to be served concurrently to the fifteen year term he is serving on his other convictions. *See State v. Wade,* No. 10AP-159, 2010 WL 5543880 (Ohio App. 10th Dist. Dec. 28, 2010); *Second Notice of Status of Petitioner's State Appeal, Exhibit 2,* Doc. 39. Petitioner again filed an appeal in which he challenged application of Senate Bill 10 to his sentence; and asserted that the trial court's imposition of separate sentences on rape and kidnapping violated the Double Jeopardy Clause; and that he had been denied effective assistance of trial counsel because his attorney failed to object to imposition of separate sentences on rape and kidnapping and the prosecutor's attempt to add terms

to Petitioner's sentence that were not set forth in his guilty plea agreement. *See id.* On December 28, 2010, the appellate court affirmed the trial court's judgment. *Id.* Petitioner timely appealed to the Ohio Supreme Court. The Ohio Supreme Court accepted the appeal, and on October 20, 2011, reversed the decision of the Court of Appeals, remanding the case for consideration pursuant to *State v. Williams*, 129 Ohio St.3d 344 (2011)(holding that Ohio's Senate Bill 10 is not to be applied to defendants who committed sex offenses prior to its enactment). *See Fourth Notice of Status of Petitioner's Appeal,* Doc. 41.

Meanwhile, on July 14, 2008, Petitioner filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that the trial court improperly sentenced him on rape and kidnapping due to a lack of separate animus on these charges, that his two theft convictions were allied offenses of similar import, and that trial counsel performed in a constitutionally ineffective manner by failing to request a limiting instruction on firearm testimony in regard to charges other than rape. *See Exhibit 15 to Return of Writ.* On September 25, 2008, the appellate court denied Petitioner's Rule 26(B) application. *Id.* On January 28, 2009, the Ohio Supreme Court dismissed Petitioner's appeal. *Exhibit 19 to Return of Writ.*

On July 21, 2009, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

---

[1] The Court issued a stay of proceedings until January 31, 2010. *See* Doc. 24.

1.      Collateral estoppel barred the admission of evidence asserting that appellant possessed and brandished a gun.  The trial court's failure to exclude this evidence denied Wade his right to a fair trial, due process, and the effective assistance of counsel as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments and violated the Double Jeopardy Clause of the Fifth and Fourteenth Amendments. . . .

2.      The admission of the gun evidence as other acts evidence violated Wade's right to a fair trial [], and due process and violated the Double Jeopardy Clause of the Fifth and Fourteenth Amendment in addition, the trial court failed to properly instruct the jury on the proper limitations of other acts evidence thereby violating Wade's rights to a fair trial.

3.      The prosecutor has an obligation to seek justice and to refrain from unfairly seeking a conviction based on improper evidence, improper argument and other misconduct under the Fifth, Sixth, Eighth and Fourteenth Amendments. . . .

4.      The representation provided to Wade fell far below the prevailing norms for counsel in a criminal case, was unreasonable, and affected the outcome in violation of the fifth, Sixth, eighth, and Fourteenth Amendments. . . .

5.      A trial court may not sentence a defendant to non-minimum and consecutive sentences without violating a defendant's constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments. . . . The decision rendered by the Supreme Court of Ohio in *State v. Foster* (2006), 109 Ohio St.3d 1, is incompatible with the controlling precedent of the United States Supreme Court and must be rejected.

6.      Because the State failed to prove the existence of an animus for kidnapping separate from the animus to commit rape and merged the two charges as allied offenses of similar import, they are merged for all purposes and the reversal of one requires the reversal of both under the Fifth, Sixth, Eighth, and Fourteenth Amendments. . . .

7.       Petitioner was denied the effective assistance of appellate counsel for failing to raise on appeal a claim that[2] the trial court erred by entering a separate judgment of conviction and corresponding sentences for both rape and kidnapping in violation of Ohio Rev. Code 2941.25 and the Double Jeopardy Clause, and Art. I, 2, 10, and 16, and the Fifth, Sixth, and Fourteenth Amendments.  The trial court was required to merge the kidnapping count after the State "elected" to pursue the rape offenses.

8.       Petitioner was denied the effective assistance of appellate counsel for failing to raise on appeal a claim that trial counsel's failure to request a limiting instruction regarding the gun evidence for the kidnapping offense fell far below the prevailing professional norms, was unreasonable and affected the outcome of Wade's trial in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments. . . .

9.       Petitioner was denied the effective assistance of appellate counsel for failing to raise on appeal a claim that the trial court erred by failing to exclude the acquitted gun evidence under evidence Rule 403(A), where the danger for unfair prejudice against Wade clearly and plainly outweighed the probative value violating Wade's due process rights and his constitutional rights to a fair trial.

It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## PROCEDURAL DEFAULT

## CLAIMS ONE, TWO, THREE AND NINE

In recognition of the equal obligation of the state courts to protect the constitutional rights

_____

[2]  On April 28, 2010, the Court granted Petitioner's motion to amend his petition to indicate that claims seven through nine raise claims of ineffective assistance of appellate counsel.  Doc. 32.

of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *Deitz v. Money,* 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Maupin,* 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state

ground, then the petitioner" may still obtain review of his claims on the merits if he establishes: (1) a substantial reason to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.* "Cause" under this test "must be something *external* to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id* at 750.

Nevertheless, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isacc,* 456 U.S. 107, 135 (1892)). Petitioners who fail to show cause and prejudice for procedural default may nonetheless receive a review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

The Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir.2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir.2000); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir.1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently

refused, in reliance on that doctrine, to review the merits of claims. *State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law.

In claim nine, Petitioner asserts he was denied effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that the trial court should have excluded evidence regarding Petitioner's use of a gun under Ohio Rule of Evidence 403(A). Petitioner failed to raise this claim in his application for reopening of his appeal pursuant to Ohio Appellate Rule 26(B). *See Exhibit 15 to Return of Writ.* He may now no longer do so, under Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).

In claims one and two, Petitioner asserts that collateral estoppel and the Double Jeopardy Clause barred admission of evidence, in regard to his convictions on kidnapping, robbery, theft, receiving stolen property, failure to comply with an order of a police officer and possession of cocaine, that he possessed and brandished a gun at his second trial after he had been acquitted of use of a firearm in his first trial and without issuance of a jury instruction limiting the use of firearm evidence. Petitioner asserts that he thereby was denied a fair trial. The state appellate court initially reversed all of Petitioner's convictions on this basis in relevant part as follows:

> [A]ppellant contends that the trial court erred by admitting testimony indicating that he used a gun during the commission of the rape when the jury in his first trial necessarily found that he did not possess a gun. Appellant also contends that the trial court erred by not giving a limiting instruction to the jury after the trial court admitted

testimony that appellant raped C.B. at gunpoint.

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution incorporates the doctrine of collateral estoppel. *Ashe v. Swenson* (1970), 397 U.S. 436, 445-446, 90 S.Ct. 1189. [FN2] Simply put, collateral estoppel means that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. *Id.* at 443; *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 442.

> FN2. The Fifth Amendment's Double Jeopardy protections are enforceable against the States through the Fourteenth Amendment. *Ashe,* at 437.

Collateral estoppel may affect successive prosecutions in one of two ways. *United States v. Brackett* (C.A .5, 1997), 113 F.3d 1396, 1398. First, it will completely bar a subsequent prosecution if one of the facts necessarily determined in the former trial is an essential element of the subsequent prosecution. For example, in *Ashe*, a defendant charged with the robbery of six people at a poker party was found not guilty of one of the robberies. The only contested issue at trial was whether Ashe was one of the robbers. The jury concluded that he was not. The state subsequently tried Ashe for the robbery of another person at the poker party. The United States Supreme Court held that because the jury in the first trial necessarily found that Ashe was not one of the robbers, the state could not prosecute him again, because a second prosecution would require the relitigation of that issue. *Id.* at 446; *see, also, Columbus v. Rodriquez* (Nov. 7, 1996), Franklin App. No. 96APC05-601 (noting that collateral estoppel may bar second prosecution).

Secondly, collateral estoppel can also bar certain evidence in a subsequent trial. The doctrine prohibits the government from relitigating an issue of ultimate fact that was determined by a valid and final judgment. *Dowling v. United States* (1990), 493 U.S. 342, 347, 110 S.Ct. 668. This prohibition, however, does not exclude, in all circumstances, relevant and probative evidence otherwise admissible simply because it relates to alleged criminal conduct for which a defendant has been acquitted. *Id.* at 348.

Evidence of alleged criminal conduct for which a defendant has been acquitted may be admitted in a second trial where the ultimate issue of fact decided in defendant's favor in the first trial is not an ultimate issue of fact in the second trial. *Wright v. Whitley* (C.A.5, 1994), 11 F.3d 542, 546; *Brackett, supra; United States v. Bailin* (C.A.7, 1992), 977 F.2d 270, 280 (preclusion applied only where issue is ultimate issue in subsequent prosecution); *State v. Cotton* (La.2001), 778 So.2d 569, 576 (no preclusion where prior acquitted conduct not ultimate issue in second trial); *Eatherton v. State* (Wyo.1991), 810 P.2d 93, 100 (evidence of theft charge for which defendant was acquitted properly admitted in subsequent burglary trial where previous acquittal did not determine ultimate issue in burglary trial).

For example, in *Santamaria v. Horsley* (C.A.9, 1998), 133 F.3d 1242, the defendant was charged with murder and robbery as well as a weapon enhancement which alleged that he used a knife in the commission of a felony. He was found guilty of murder and robbery but acquitted of the weapon enhancement. After an appeals court reversed those convictions, on remand the defendant sought to prohibit the prosecution from retrying him on the theory that he used a knife during the murder. The trial court agreed and prohibited the state from proceeding on that theory. After the California Supreme Court reversed, the United States Ninth District Court of Appeals, on a petition for a writ of habeas corpus, held in part that because the State was not required to prove beyond a reasonable doubt that the defendant used a knife in order to convict the defendant of murder in the second trial, the use of a knife was not an ultimate fact in the second trial. Thus, the state could present evidence that the defendant stabbed the victim. *Id*. at 1247.

Similarly, an issue may be relitigated in a second trial where the later action is governed by a lesser standard of proof. *Dowling*. For example, evidence of a prior bad act for which a defendant was acquitted may be introduced at a second trial under Evid.R. 404(B) to prove, among other things, identity. Such evidence is admissible because the State is not trying the defendant for the bad act in the second trial. *Id.* (evidence that defendant later committed home invasion, even though he was acquitted of the robbery, could be introduced at a later trial for earlier bank robbery to prove identity); *Charles v. Hickman* (C.A .9, 2000), 228 F.3d 981, 986 (testimony regarding previously acquitted charge of murder properly admitted to prove motive in subsequent trial); *In re Burton*, 160 Ohio App.3d 750, 2005-Ohio-2210, at ¶ 14.

The case at bar does not involve the successive prosecution theory of collateral estoppel. At his second trial, appellant was not tried for aggravated robbery or any gun specifications. Here, the issue is whether or not collateral estoppel prohibited the admission of testimony in his second trial that appellant possessed a gun. We review the trial court's application of collateral estoppel de novo. *Charles,* at 985; *Bailin,* at 281 (de novo review of collateral estoppel decision) cf. *United States v. Dakota* (C.A.6, 2000), 197 F.3d 821, 826 (claims of double jeopardy reviewed de novo).

To determine whether collateral estoppel bars the admission of evidence that appellant used a gun during the commission of these offenses, we must first determine whether the jury in the first trial necessarily found that appellant did not possess a gun. Thus, we must examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matters, and decide whether the jury could have reached its verdict without finding that appellant did not possess a gun. *Id.; Bailin,* at 280 (court must decide whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration). The defendant bears the burden to prove that the issue was necessarily resolved by the prior jury. *Dowling*, at 350.

The State contends that the not guilty verdict in the first trial for the aggravated robbery count as well as the firearm specifications did not actually determine that appellant did not use a gun, because the jury could have acquitted appellant for other reasons. We disagree. The elements of aggravated robbery require that appellant attempt or commit a theft offense while possessing a deadly weapon. R.C. 2911.01. Appellant admitted to stealing C.B.'s car, computer, purse, and phone. Thus, the only conceivable reason for the jury's acquittal on this count was a finding that appellant did not possess a gun during the theft. Additionally, the jury asked during its deliberations whether appellant must have had a deadly weapon to find him guilty of aggravated robbery. The trial court replied in the affirmative. The jury then acquitted appellant of aggravated robbery and all of the firearm specifications. It is clear that the first jury actually decided that appellant did not possess a gun during the offenses and it is not conceivable that a rational jury could have grounded its verdict on any other issue. [FN3] *Ashe,* at 444.

      FN3. The State argues that the first jury may have

acquitted appellant because the gun was not operable. We reject that claim based on the jury's own question as well as the fact that no evidence or argument was presented in the first trial on this issue. In order to determine what issue was actually litigated in the first trial, we do not apply the rule of collateral estoppel with a "hypertechnical and archaic approach" but with "realism and rationality." *Ashe*, at 444.

Next, we must determine whether the issue necessarily decided in the first trial (that appellant did not have a gun) is an ultimate issue in the subsequent trial. To find appellant guilty of rape or kidnapping, the State had to prove beyond a reasonable doubt that appellant forcibly engaged in sexual conduct with C.B. and restrained her liberty using force. See R.C. 2907.02 and 2905.01. Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The definition of force does not require the use of a weapon. Therefore, the State could prove these offenses without proving that appellant used a gun.

Admittedly, testimony indicating appellant had a gun could be used to prove the force element of both rape and kidnapping. However, the jury's general verdict of guilty does not provide insight as to what facts the jury believed in this trial to find appellant guilty of rape and kidnapping. There are other ways to establish the element of force for these offenses. Here, there was evidence that C.B. was less than five feet tall and that appellant was six feet tall, weighed 170 pounds and that he forced his way into her apartment. We also note that although the first jury determined that appellant did not have a gun, it nevertheless found appellant guilty of rape and kidnapping, thereby finding the element of force beyond a reasonable doubt even without a gun. Thus, the State was not precluded from admitting evidence that appellant possessed a gun during the offenses, provided that the testimony was otherwise admissible. *Dowling*, at 348. [FN4]

FN4. Appellant's reliance on *Rice v. Marshall* (C.A.6, 1987), 816 F.2d 1126 is misplaced. First, we note that the case dealt with an ineffective assistance of counsel claim. Secondly, although the court did note, relying on *Ashe, supra*, that a previous acquittal of a weapon charge constituted a finding that he did not have a gun

and precluded the introduction of contrary evidence at a subsequent trial, that case was decided before *Dowling* clarified the scope of the *Ashe* holding.

We further find that the testimony that appellant possessed a gun during these offenses was admissible. Evidence of appellant's actions during the offenses is admissible if the evidence is "inextricably related" to the crime charged and plays a role in explaining the sequence of events and gives a complete picture of the alleged crime. *State v. Thompson* (1981), 66 Ohio St.2d 496, 498; *State v. Henry*, Franklin App. No. 05AP-1075, 2006-Ohio-4783, at ¶ 27. Testimony that appellant possessed a gun during the offenses is inextricably related to the charges and provides a complete picture of the sequence of events. *See State v. Jackson*, Franklin App. No. 02AP-867, 2003-Ohio-6183, at ¶ 31. The jury was entitled to a complete picture of the alleged crimes. The trial court did not err by admitting testimony indicating that appellant possessed a gun during these offenses. [FN5]

> FN5. We do not agree with the trial court that evidence that appellant used a gun during these offenses was properly admitted as "other acts" evidence under Evid.R. 404(B) because the evidence was not admitted to prove any of the permissible purposes under that rule. Nevertheless, for the reasons discussed, the evidence was admissible on other grounds.

Finally, appellant contends that the trial court erred by not giving the jury a limiting instruction regarding the gun testimony. Appellant did not request that the trial court instruct the jury that he had previously been acquitted of possessing a gun during the commission of the offenses. Instead, he requested that the trial court instruct the jury that it could not consider the gun testimony to determine whether he used force in the rape. The trial court denied appellant's request. It is well-established that a trial court has broad discretion in instructing the jury. *State v. Simpson*, Franklin App. No. 01AP-757, 2002-Ohio-3717, at ¶ 84, citing *State v. Smith* (Apr. 2, 2002), Franklin App. No. 01AP848.

Collateral estoppel did not bar the admission of testimony indicating appellant had a gun during the commission of the offenses. Further, that testimony was admissible to provide the jury a full and complete picture of the sequence of events the victim described. However, the State did not present the testimony simply to provide the jury with a complete picture of the events. During the State's questioning of C.B., the prosecutor referred to appellant's possession of a gun during the rape a number of times, implying that appellant used the gun to commit the rape. In closing arguments, the prosecutor referred to the rape charge and reminded the jury that "the Defendant had a weapon while committing that offense." It is clear that the State used the gun testimony to prove that appellant used force to commit the rape. [FN6]

> FN6. The prosecutor also told the jury, in regards to the kidnapping charge, that C.B. would have left the apartment but for the fact that appellant had a gun.

Although collateral estoppel did not prohibit the admission of testimony indicating that appellant possessed a gun, the principle underlying that doctrine requires a limiting instruction such as the one appellant requested. *Cf. Rossetti v. Curran* (D.Mass.1995), 891 F.Supp 36, 47 (noting concerns underlying doctrine). The principle is that one who has been acquitted of a crime should not be forced to "run the gauntlet" a second time. *Ashe*, at 446. *Cf. Rossetti*, quoting Dowling ("If there ever was the likelihood that such evidence would create the 'constitutionally unacceptable risk that the jury will convict ... on the basis of inferences drawn from the acquitted conduct,' it is this case."). The danger of this occurring in this case was high.

Absent a limiting instruction, there was a significant danger that the jury in the second trial would find the element of force for rape based upon evidence that the appellant had a gun, even though the jury in the first trial necessarily found that appellant did not possess a gun during the offenses. Appellant's requested limiting instruction would have allowed C.B. to describe her version of the events but would have prevented the jury from using the evidence that appellant had a gun to find the element of force for a rape conviction. The trial court abused its discretion by not instructing the jury that it could not consider the gun testimony in determining whether appellant used force while committing the rape offense. [FN7]

FN7. Although we have previously referred to evidence other than the gun testimony that could support a finding of force in this case, that evidence was minimal. There is a substantial likelihood that the jury considered appellant's alleged use of a gun in finding the element of force. Thus, we cannot say that the trial court's error was harmless. *See State v. Ganelli,* Cuyahoga App. No. 84694, 2005-Ohio-770, at ¶ 28.

Appellant's first assignment of error is overruled. However, because the trial court erred by not providing the limiting instruction requested by appellant, we sustain in part appellant's second assignment of error. Our resolution of appellant's second assignment of error renders appellant's remaining assignments of error moot. App.R. 12(A). This matter is remanded to the Franklin County Court of Common Pleas for further proceedings consistent with law and this opinion.

*State v. Wade*, 2008 WL 366143, at *3-7. However, the Ohio Tenth District Court of Appeals thereafter granted the State's motion for reconsideration, reversing only Petitioner's convictions on rape and aggravated burglary, and reviewing the remainder of his convictions for plain error only, due to Petitioner's failure to object:

Appellant did not request a limiting instruction for the gun testimony for any count other than the rape count. Therefore, he waived any error in the trial court's failure to provide such an instruction absent plain error. *State v. Rawls*, Franklin App. No. 03AP-41, 2004-Ohio-836, at ¶ 21; *State v. Riley*, Franklin App. No. 06AP-1091, 2007-Ohio-4409, at ¶ 4; *State v. Mitchell*, Cuyahoga App. No. 88977, 2007-Ohio-6190, at ¶ 84. " 'Plain error is an obvious error * * * that affects a substantial right.'" *State v. Yarbrough*, 95 Ohio St.2d 227, 2002-Ohio-2126, at ¶ 108, quoting *State v. Keith* (1997), 79 Ohio St.3d 514, 518. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. *Yarbrough,* at 108. Notice of plain error is taken with the utmost caution only under exceptional circumstances and only where necessary to prevent a miscarriage of justice. *State v. Martin*,

Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 28.

We first address appellant's kidnapping conviction. To convict appellant of kidnapping, the State had to prove beyond a reasonable doubt that appellant, by force, threat, or deception, removed the victim from a place or restrained her liberty to facilitate any felony or flight thereafter or to engage in sexual activity with the victim against her will. R.C. 2905.01.

Here, appellant forcibly pushed his way in through the front door and stood in between the victim and the front door, thereby blocking the victim's exit from the apartment. There was evidence that appellant was much taller and heavier than the victim. In light of this evidence, a reasonable jury could have concluded that even without the evidence of the gun, appellant, by force or threat, restrained the victim's liberty in order to facilitate the commission of a felony or to engage in sexual activity with the victim. Therefore, we cannot say that the outcome of his kidnapping conviction clearly would have been different but for a limiting instruction as to the gun testimony. *Cf. State v. Litreal*, 170 Ohio App.3d 670, 2006-Ohio-5416, at ¶ 24 (any error in admitting testimony not plain error where remaining evidence was sufficient for rational trier of fact to find defendant guilty).

\*\*\*

[As to] gun testimony . . . on his convictions for robbery, theft, receiving stolen property, failure to comply with an order of a police officer, and possession of cocaine. . . [t]hese counts were either admitted by appellant or committed days after the rape and kidnapping. The trial court did not commit plain error when it did not provide a limiting instruction for the gun testimony on these counts.

*State v. Wade*, 2008 WL 1723671, at \*1-3.

Turning to the instant Petition, Petitioner asserts in Claims 1 and 2 that the doctrines of

collateral estoppel and the Double Jeopardy Clause barred admission of evidence in his second trial

that he possessed and brandished a gun with respect to his convictions on kidnapping, robbery, theft,

receiving stolen property, failure to comply with an order of a police officer and possession of cocaine because he had been acquitted of use of a firearm in his first trial. Petitioner asserts that admission of this evidence at his second trial, without an accompanying limiting jury instruction, violated his constitutional rights. As set forth above, however, Petitioner failed to object and the court of appeals, therefore, reviewed these claims merely for plain error.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir.2000).

> Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley,* 380 F.3d 932, 968 (6th Cir.2004), *cert. denied,* 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith,* 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Stojetz v. Ishee,* 2006 WL 328155 *12 (S.D. Ohio Feb.10, 2006).

> A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams,* 380 F.3d at 968; *Hinkle,* 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle,* 271 F.3d at 244 (citing *Ylst, v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw,* 484 F.Supp.2d 753, 771 (N.D. Ohio 2007). Therefore, Petitioner has waived

claims one and two for federal habeas corpus review.[3]

In claim three, Petitioner asserts, *inter alia*, that he was denied a fair trial due to improper comments by the prosecutor during closing argument. Again, the state appellate court reviewed this claim for plain error only, due to Petitioner's failure to object:

> Appellant also contends that the prosecutor made improper statements during closing arguments. In general, prosecutors are given considerable latitude in opening statement and closing argument. *State v. Ballew* (1996), 76 Ohio St.3d 244, 255. In closing argument, a prosecutor may freely comment on " ' what the evidence has shown and what reasonable inferences may be drawn therefrom." ' *State v. Lott* (1990), 51 Ohio St.3d 160, 165, quoting *State v. Stephens* (1970), 24 Ohio St.2d 76, 82. Appellant did not object during the prosecutor's closing argument. The failure to object to alleged prosecutorial misconduct waives all but plain error. *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 126; *State v. Loch,* Franklin App. No. 02AP-1065, 2003-Ohio4701, at ¶ 43.

> Appellant specifically points to the prosecutor's statements in closing argument that his resistance to police efforts to obtain a DNA sample could be considered as an indicia of guilt, and that appellant only came up with his version of events after he obtained results of the DNA test. We have already determined that the refusal to provide a DNA sample and the circumstances of that refusal could be used by the State to demonstrate appellant's consciousness of guilt. Therefore,

---

[3] Respondent did not raise this aspect of Petitioner's procedural default and, as a general rule, procedural default is an affirmative defense that must be raised by the state at the first possible opportunity, or it will be waived. *Trest v. Cain,* 522 U.S. 87, 89 (1997) (holding that state's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland,* 518 U.S. 152, 166 (1996) (holding that procedural default is normally an affirmative defense that will be waived if not raised). Although federal courts are not required to raise procedural default *sua sponte, Trest,* 522 U.S. at 89, neither are they precluded from raising or recognizing a procedural default that was not expressly raised by the state. That is especially true where, as here, petitioner has the opportunity to respond to the procedural default in any objections he files. *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005), *r'hng and r'hng en banc denied* July 6, 2005 (citing *Lorraine v. Coyle,* 291 F.3d 416, 426 (6th Cir .2002)); *Elzy v. United States,* 205 F.3d 882, 886 (6th Cir. 2000).

the prosecutor could properly comment on that in closing argument. Second, the prosecutor's comment about appellant's changing version of events was a fair inference from the evidence presented at trial. When interviewed by the police on September 2, 2002, appellant denied any knowledge of an incident with the victim. Later, at his first trial and again in this trial, appellant claimed that he previously met the victim and that they had consensual sex. It was fair for the prosecutor to infer, based on the evidence at trial, that appellant altered his version of events based on information he obtained after the September 2, 2002 interview. We find no plain error in regard to these comments.

*State v. Wade*, 2008 WL 1723671, at *4. Again, because the court of appeals applied a plain error standard, Petitioner has waived his claim of prosecutorial misconduct based on improper statements during closing arguments, as set forth in claim three for federal habeas review. *Seymour v. Walker,* 224 F.3d at 557.

Petitioner thus has waived claims one through three and claim nine for federal habeas corpus review.

Petitioner may still may obtain review of these claims on the merits, if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations. Again, as set forth above, "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir.2003) (quoting *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)).

## ASSISTANCE OF COUNSEL
## DEFENSE TO DEFAULT OF CLAIMS ONE, TWO, THREE AND NINE

As cause for his procedural default of claim three, Petitioner asserts ineffective assistance of his trial counsel. He also asserts, generally, in count four that his representation fell below prevailing norms, and in claim eight that his appellate counsel was ineffective for failing to raise and issue on appeal regarding trial counsel's failure to request a limiting instruction regarding the gun evidence.

The constitutionally ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 451-52 (2000), citing *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986).

Here, the state appellate court rejected Petitioner's claim of ineffective assistance of counsel based on his attorney's failure to object to improper remarks by the prosecutor in closing argument in relevant part as follows:

> Appellant first argues that the prosecutor elicited improper and irrelevant testimony describing how the police obtained a DNA sample from appellant. Specifically, the lead detective in this case was allowed to testify that appellant refused to provide a DNA sample and that "99 times out of 100" defendants comply with requests for DNA samples. The detective also testified about the steps taken to obtain the sample from appellant once they obtained a search warrant, including having the SWAT team restrain appellant. Appellant claims this testimony solely was offered to inflame the jury and to suggest he refused because he was guilty. The State claims that the evidence was properly admitted to illustrate appellant's consciousness of guilt. We agree.

> " 'It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.' " *State v. Williams* (1997), 79 Ohio St.3d 1, 11, quoting *State v. Eaton* (1969), 19 Ohio

St.2d 145, 160. Although no Ohio case has specifically addressed whether or not the refusal to provide a DNA sample can be used as evidence of consciousness of guilt, courts in other states have held that the refusal to provide blood samples is admissible as evidence of consciousness of guilt. *See State v. Hernandez* (2003), 117 Wash.App. 1081; *People v. Roberts* (Cal.1992), 826 P.2d 274, 310-311.

Testimony that appellant refused to provide a DNA sample was admissible as evidence of consciousness of guilt. The refusal suggests that appellant was attempting to conceal his involvement in the crime. See *Williams; State v. Barton,* Warren App. No. CA2005-03-036, 2007-Ohio-1099, at ¶ 100 (accused's use of counter measures in an attempt to defeat a polygraph examination may indicate consciousness of guilt). The testimony describing the steps taken by the police to obtain the sample from appellant was relevant to show just how far appellant would go to conceal his involvement. *Columbus v. Dials,* Franklin App. No. 04AP-1099, 2005-Ohio-6305, at ¶ 46. Appellant attempted to blunt the impact of his refusal to provide a DNA sample by offering another reason for his refusal. The State did not engage in improper conduct by asking the detective about appellant's refusal.[4]

* * *

. . . . It was fair for the prosecutor to infer, based on the evidence at trial, that appellant altered his version of events based on information he obtained after the September 2, 2002 interview. . . .

[A]ppellant contends that he received ineffective assistance of counsel at his trial. We disagree.

In order to prevail on an ineffective assistance of counsel claim, appellant must meet the two-prong test enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, accord *State v. Bradley* (1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. Initially, appellant must show that counsel's performance was deficient. To meet that requirement, appellant must

---

[4]The Court has already set out the analysis of the court of appeals with regard to Petitioner's claim of prosecutorial misconduct and will not repeat it here.

show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Appellant may prove counsel's deficient conduct by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id*. at 690.

If appellant successfully proves that counsel's assistance was ineffective, the second prong of the *Strickland* test requires appellant to prove prejudice in order to prevail. *Id*. at 692. To meet that prong, appellant must show counsel's errors were so serious as to deprive her of a fair trial, a trial whose result is reliable. *Id*. at 687. Appellant would meet this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Appellant. . . claims that his trial counsel was ineffective for failing to object to the instances of prosecutorial misconduct alleged in his third assignment of error. We have already determined that the conduct complained of was not prosecutorial misconduct. Accordingly, counsel was not ineffective for failing to object to that conduct. *State v. Hairston* (June 11, 1999), Montgomery App. No. 17218.

*State v. Wade*, 2008 WL 1723671, at *3-5.

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Court of Appeals for the Sixth Circuit has summarized this standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case.

*Boykin v. Webb,* 541 F.3d 638, 642 (6th Cir. 2008) (quoting *Williams v. Taylor,* 529 U.S. 362 (2000)). This standard is "difficult to meet," as under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal habeas relief functions as a " 'guard against extreme malfunctions in the state criminal justice systems,' "not as a means to correct errors. *Greene v. Fisher*, 132 S.Ct. 38, 43-44, 2011 WL 5335411, at *3-4 (Nov. 8, 2011)(citing *Harrington v. Richter*, 562 U.S. ——, ——,

131 S.Ct. 770, 786 (2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). In habeas corpus proceedings, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* 131 S.Ct. at 786. With these standards in mind, the Court turns to the merits of Petitioner's claim.

In *Strickland v. Washington*, the Supreme Court reiterated that the right to counsel guaranteed by the Sixth Amendment is the "right to effective assistance of counsel." 466 U.S. 668, 686 (1984.) To prevail on a complaint of ineffective assistance of counsel, a petitioner must demonstrate the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 130 S.Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. Both standards created by *Strickland* and § 2254(d) are "highly deferential." *Strickland*, 466 U.S. at 689. When *Strickland* and § 2254(d) "apply in tandem," review is "doubly" deferential. *Knowles v. Mirzayance*, 129 S.Ct., 1411, 1420 (2009).

Given the difficulties "inherent" the analysis of whether an attorney's performance was constitutionally deficient,"a court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance. . . ." *Strickland,* 466 U.S. at 687. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 692. A petitioner, therefore, must show prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id.* at 693.

To do so, a petitioner must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

Petitioner asserts that the state appellate court's decision denying this claim is unreasonable because the appellate court failed to consider that he refused DNA testing because he wanted to consult with his attorney. *See Traverse*, at 31-32. He complains that the prosecutor argued that the jury could consider his resistance to submit to DNA testing and the change in his initial statement to police after DNA testing, as indicia of his guilt.[5] This evidence, however, was properly admitted as was the prosecutor's argument regarding reasonable inferences of such evidence, under Ohio law. Petitioner has referred to, and this Court is aware of, no cases holding to the contrary. Similarly, Petitioner's argument that police had a duty to advise him of the consequence of his actions is

---

[5] Petitioner refused to submit to DNA testing after being advised that police had a search warrant authorizing them to use force, if necessary, to obtain a sample of his DNA. *Trial Transcript*, at 603. Police restrained Petitioner on the floor and obtained the DNA sample by holding his nose and taking a swab from his mouth. *Id.* at 603-604.

without support. The prosecution properly admitted evidence regarding the events leading to Petitioner's arrest. None of the evidence violated Petitioner's attorney-client privilege, which protects only private communications between a client and his attorney.[6] Moreover, Petitioner testified at trial and thereby was able to explain his reason for refusing to submit to DNA testing. Id. at 702-703. Petitioner has referred to, and this Court is aware of, no law requiring police to advise Petitioner of the consequences of his actions. In short, and for the reasons detailed by the state appellate court, this Court likewise concludes that the statements complained of did not constitute prosecutorial misconduct. Petitioner, therefore, has failed to establish the ineffective assistance of counsel under the two-prong test set forth in *Strickland*.

He likewise has failed to establish cause for his procedural default of that portion of claim three, in which he asserts that he was denied a fair trial due to the prosecutor's improper statements in closing argument.

Petitioner has failed to establish cause for his procedural defaults of claims one, two, nine, and the portion of claim three, in which he contends he was denied a fair trial due to prosecutorial misconduct in closing argument.

---

[6] "In the Sixth Circuit, the essential elements of the attorney-client privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser (8) except the protection be waived.

*See E.E.O.C. v. Texas Hydraulics, Inc.,* 246 F.R.D. 548, 554 (E.D. Tenn. 2007)(citing *Humphreys, Hutcheson and Moseley v. Donovan,* 755 F.2d 1211, 1219 (6th Cir. 1985)

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

Claims one, two, a portion of claim three, and claim nine are procedurally defaulted.

## CLAIM THREE

Closely related to Petitioner's claim that the prosecutor made improper arguments in closing, Petitioner also asserts in claim three that he was denied a fair trial because the prosecutor elicited improper comments regarding his refusal to provide DNA evidence to police. The state appellate court rejected the claim, as previously discussed. *See State v. Wade*, 2008 WL 1723671, at *3-4.

The scope of federal habeas corpus review of a claim of prosecutorial misconduct is narrow. A federal court does not sit as an appellate court employing supervisory powers to rectify ordinary trial error in cases before it for habeas review. *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). Rather, the Court must consider only whether the prosecutor's conduct was so egregious as to deny the petitioner fundamental fairness. *Id.* at 642-43; *Martin v. Foltz*, 773 F.2d 711, 716-17 (6th Cir. 1985); *Angel v. Overberg*, 682 F.2d 605, 607 (6th Cir. 1982)(*en banc*). This determination is made by evaluating the totality of the circumstances surrounding the case. *Angel v. Overberg*, 682 F.2d at 607.

> Factors relevant in making this inquiry are: the degree to which the remarks may tend to mislead the jury and to prejudice the accused; whether the remarks were isolated or extensive; whether they were deliberately placed before the jury; and the strength of the case

> against the accused.  Finally, this Court notes the "extreme nature of the prosecutorial misconduct required for a federal court to issue the writ."

*Martin v. Foltz*, 773 F.2d at 716 (citations omitted)(quoting *Cook v. Bordenkircher*, 602 F.2d 117, 120 (6th Cir. 1979)).  For the reasons addressed by the state appellate court, this Court is not persuaded that Petitioner has met this standard here.  In *South Dakota v. Neville*, 459 U.S. 553, 565 (1983), the Supreme Court held that evidence of a defendant's refusal to take a blood alcohol test could be used as evidence of guilt regardless of whether the defendant had been advised that his refusal could be used against him at trial.  Further, Petitioner has referred to, and this Court is not aware of any decision of the United States Supreme Court indicating that it is improper for a prosecutor to argue that refusal to submit to DNA testing may be considered as evidence of consciousness of guilt, as is required under the 28 U.S.C. § 2254(d).

The remaining aspects of claim three are without merit.

## CLAIMS FOUR and FIVE

In claim five, Petitioner asserts that the trial court unconstitutionally imposed non-minimum consecutive terms of incarceration and that application of *State v. Foster*, 109 Ohio St.3d at 1, violated the Ex Post Facto Clause and due process.   In claim four, Petitioner asserts, *inter alia*, that he was denied effective assistance of counsel because his attorney failed to object to his sentence on this basis.  The state appellate court rejected these claims in relevant part as follows:

> Appellant's sixth, seventh, and eighth assignments of error each contend that the Supreme Court of Ohio's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, is incompatible with the United States Supreme Court precedent in this area and that he is entitled to minimum, concurrent sentences on remand. This court has previously considered and rejected this very argument. *State v. Hudson*, Franklin

App. No. 06AP-335, 2007-Ohio-3227, at ¶ 23. Appellant also claims that the *Foster* court's severance remedy, as applied to his case, violates due process and ex post facto principles against retroactivity. This court has also consistently rejected this argument. *Id.* at ¶ 25. Appellant's sixth, seventh, and eighth assignments of error are overruled.

\*\*\*

[A]ppellant contends that his trial counsel was ineffective for failing to make objections based on assignments of error six and seven. We disagree. We have already rejected the arguments he presents in these assignments of error. The failure to raise nonmeritorius objections is not deficient performance, and additionally, appellant cannot show that he was prejudiced by counsel's failure to raise these issues.

*State v. Wade*, 2008 WL 1723671, at \*5-6.  Petitioner has failed to establish that the state appellate court's decision is unreasonable so as to warrant federal habeas corpus relief.  28 U.S.C. § 2254(d), (e).

In *Hooks v. Sheets,* 603 F.3d 316, 320-21 (6ᵗʰ Cir. 2010), the United States Court of Appeals for the Sixth Circuit rejected the arguments now presented by Petitioner, at least as it applies to imposition of consecutive terms of incarceration:

The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,' " (3) " 'changes the punishment' " to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence' " so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). The Ex Post Facto Clause, however, provides by its terms that it is applicable only to acts of the Legislature, and " 'does not of its own force apply to the Judicial Branch of government.' " *Id.* (quoting *Marks v. United States,* 430

36

U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Nevertheless, the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *See id.* at 457. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. *Id.* at 458-59.

A state's statutory scheme does not violate the Sixth Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Oregon v. Ice,* ---U.S. ----, ---------, 129 S.Ct. 711, 714-15, 172 L.Ed.2d 517 (2009). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.* At the time Hooks committed his crimes, Ohio permitted the court to impose consecutive rather than concurrent sentences if it found particular facts, *see* ORC § 2929.14(E)(4), and explained its "reasons for imposing the consecutive sentences," ORC § 2929.19(B)(2)(c). The Ohio Supreme Court nevertheless determined that these statutory provisions violated *Blakely* because they allowed the imposition of longer sentences – consecutive sentences – based upon judicial factfinding. *Foster,* 845 N.E.2d at 491.

Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject contemplated consecutive sentences. Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under *Ice.* Thus, Hooks was initially and constitutionally subject to consecutive sentences according to the "guided discretion" of the court. *See Foster,* 845 N.E.2d at 495. Moreover, Hooks was always aware of the potential for consecutive sentences. On re-sentencing post- *Foster* he remained subject to consecutive sentences within the discretion of the court. Since Hooks was *always* subject to

> consecutive rather than concurrent sentences in the discretion of the
> trial court, his re-sentencing under *Foster* did not raise ex post facto
> or due process concerns. We need not reach the broader question of
> whether re-sentencing under *Foster* ever violates the Due Process or
> Ex Post Facto Clauses because *Foster's* application in Hooks's case
> does not do so.

*Id.,* at 320-21. Further, Petitioner's argument has been repeatedly rejected by state and federal

courts, including this Court. *See, e.g., Smith v. Brunsman*, 626 F.Supp.2d 786, 793-95 (S.D. Ohio

2009)(application of *Foster* violates neither the due process nor the ex post facto clauses).

Petitioner faced the same sentencing ranges prior to and after *Foster*. The trial court's

imposition of non-minimum consecutive terms of incarceration after *Foster* did not violate the Due

Process or Ex Post Facto Clause. Petitioner therefore has failed to establish the ineffective

assistance of counsel based on his attorney's failure to object at sentencing on this basis under the

test set forth in *Strickland.*

Claims four and five are without merit.


## CLAIM SIX

In claim six, Petitioner asserts that his convictions for rape and kidnapping violate the

Double Jeopardy Clause because these crimes were committed with the same animus and the result

of one act. As this claim now applies to Petitioner's rape conviction pursuant to the terms of his

negotiated guilty plea, the state appellate court rejected the claim in relevant part as follows:

> On remand, a third trial was scheduled to retry the aggravated
> burglary and rape charges. While awaiting a third trial, appellant's
> counsel, appellant, and the State reached a plea agreement with
> respect to the two remaining counts, pursuant to which appellant

agreed to plead guilty to the rape charge and in exchange, the prosecution would request a nolle prosequi as to the aggravated burglary charge.  (Tr. 15; R. 675-76.)  The following exchange took place during the plea hearing:

[MS. CANEPA:] Your Honor, upon acceptance of the Defendant's plea to the rape conviction – or to the rape charge, the State would request a nolle prosequi as to Count One of the indictment.

Your Honor, I do have a two-page plea form signed by myself, Mr. Weisman and the Defendant setting forth that a plea in this case is punishable by a prison term of up to ten years.

*** 

Additionally, Your Honor, it's my understanding that he is aware that he is subject to tier registration under 2950.01, and there is a registration form filled out to that end.

And, Your Honor, I would also note for the record that there's a joint recommendation being made between the State and defense, and I would note for the record that I did speak with [the victim] just moments ago, and she is in agreement with this plea, that there be three years to be served concurrently with the Defendant's current 15-year conviction sentence in the same case number, that being 02CR-5493.

*** 

Additionally, Your Honor, I believe there's an agreement that for purposes of this plea that the rape and the kidnapping are not merging but rather be served concurrently.

MR. WEISMAN: That is the spirit of the plea, Your Honor.

(Tr. 14-16.)

39

Following the prosecution's recitation of the agreement on the record, the court addressed appellant to confirm that he understood the plea agreement. The following exchange occurred:

\*\*\*

THE COURT: . . . I understand your attorney and the prosecutor are recommending the three years concurrent, and I have told Mr. Weisman that I will accept this recommendation, but I just have to – I have to go over what the possible consequences are.

\*\*\*

Prior to sentencing, the court asked appellant's counsel if he had any statement he would like to make. Counsel then requested appellant be awarded three years of jail-time credit and further stated, "[w]e would ask the Court to follow the joint recommendation." (Tr. 23.)

The trial court then imposed a sentence of three years and ordered it to be served concurrently to the other counts for which appellant was currently serving time. (Tr. 23.) The trial court also awarded three years of jail-time credit as to the rape count. (Tr. 23.) Upon a request from appellant for clarification, the trial court confirmed that the plea and sentence on the rape count would not affect appellant's "outdate." (Tr. 24.)

\*\*\*

[A]ppellant argues the trial court erred in imposing a separate sentence for the allied offenses of rape and kidnapping. . .

Appellant argues that the rape and kidnapping counts were previously determined to be allied offenses of similar import which were not committed with a separate animus following sentencing after the first and second trials. As a result, the two offenses were found to have merged for sentencing purposes. Appellant argues the trial court's acceptance of the plea agreement and its subsequent imposition of separate sentences for the rape and kidnapping counts violates his

right to be free from double jeopardy because he should have been convicted of only one count, pursuant to R.C. 2941.25.

Appellant further argues the record fails to demonstrate that he waived his rights or stipulated that the offenses were committed with a separate animus. In addition, appellant submits the trial court did not make a finding that the offenses were committed with a separate animus. Appellant also argues that imposition of multiple sentences for allied offenses of similar import constitutes plain error and requires remand. Furthermore, appellant contends his counsel was ineffective in failing to object to the trial court's imposition of multiple sentences for allied offenses of similar import, and in allowing the State to add additional terms to the plea agreement. Appellant asserts he was prejudiced as a result of this, as his counsel cannot waive his right to be free from double jeopardy.

The State, on the other hand, argues the invited error and plain error doctrines bar review of appellant's merger claim. The State asserts that pursuant to the oral recitation of the plea agreement placed on the record, appellant agreed to forego raising the argument that merger applied. The State also points to the joint recommendation recited in the written plea entry, which clearly abandoned any merger argument. Together, the State contends these actions demonstrate the parties agreed there would be no merger and the invited error doctrine bars appellant from obtaining relief.

Even if the invited error doctrine is not applicable, the State argues the concept of waiver and/or forfeiture should apply, and further submits no plain error occurred here. Furthermore, the State contends that the merger claim fails on its merits because a separate animus exists for the kidnapping under the facts of this case, due to the prolonged restraint of the victim's freedom. The State asserts any previous decision by the trial court to merge the rape and kidnapping counts was not binding upon the court at the time the plea was entered.

\*\*\*

We disagree with appellant's contention that he did not waive his rights with respect to any merger argument and/or that he did not

stipulate that the offenses were committed with a separate animus. The record reflects otherwise.

The prosecutor specifically advised the trial court there was an agreement or understanding that the rape and kidnapping would not be merged, but instead would be run concurrently. Appellant's counsel then confirmed that agreement by stating, "[t]hat is the spirit of the plea, Your Honor." (Tr. 16.). Because the State and a defendant can stipulate in a plea agreement that offenses were committed with a separate animus, a defendant can be subjected to more than one conviction and sentence. . . . Therefore, we find that, pursuant to the terms of the plea agreement, which also included a joint recommendation for a concurrent sentence, the parties agreed that appellant's sentence on the rape charge would not merge with his prior sentence on the kidnapping offense. Under the invited error doctrine, reversal is not warranted here. . . .

Even if the invited error doctrine does not apply and the joint recommendation and plea agreement are not dispositive of the issue, we further note there is evidence, including testimony presented at trial, which demonstrates the existence of a separate animus for the two offenses. Here, the kidnapping was not merely incidental to the rape, which lasted five or ten minutes, but also involved prolonged restraint of 20 to 30 minutes, thus supporting a reasonable finding that the two crimes were committed with a separate animus. . . .

Furthermore, we rejected appellant's assertion that the trial court's earlier decisions to merge the rape and kidnapping counts were binding at the time the sentence took place following the plea to the rape charge. Our June 12, 2008 memorandum decision on appellant's application for reconsideration, makes it clear that the merger issue would need to be decided by the trial court if appellant was convicted of the rape upon retrial. (R. 517, at ¶7.)

Finally, because appellant did not object to the lack of merger at the time of the sentencing hearing, our review of this matter would be subject to a plain error standard. Based upon the circumstances here, we find no plain error.

*See Exhibits to Notice of Status of Petitioner's State Appeal,* Doc. 39.

Here, Petitioner does not dispute the factual findings of the state appellate court. For the reasons set forth by the state appellate court, Petitioner has failed to establish he is entitled to habeas corpus relief. He has failed to rebut the state court's factual finding that the kidnapping and rape counts were committed with separate animus and involved two separate offenses. Moreover, Petitioner agreed to be sentenced on both the rape and kidnapping charge, in exchange for a jointly recommended concurrent sentence, and the State's agreement to dismiss the aggravated burglary charge, thereby reducing his exposure to a lengthier sentence.

Claim six is without merit.

## CLAIM SEVEN

In claim seven, Petitioner asserts that he was denied effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that the trial court violated the Double Jeopardy Clause and Ohio's statute on allied offenses of similar import by imposing separate sentences on both rape and kidnapping. This claim is moot, because the state appellate court reversed Petitioner's rape conviction on direct appeal, and because the state appellate court ultimately rejected this argument after Petitioner's guilty plea, as discussed, *supra*.

## CLAIM EIGHT

In claim eight, Petitioner asserts he was denied effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of ineffective assistance of trial counsel based on his attorney's failure to request a limiting instruction on evidence regarding his use of a firearm as it applied to the kidnapping charge against him. The state appellate court rejected this claim, reasoning as follows:

[A]ppellant claims his appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to request the limiting instruction regarding the gun testimony for the counts other than the rape count. We disagree.

As we have previously noted appellant's convictions for theft, receiving stolen property, failure to comply with an order of a police officer, and possession of cocaine were either admitted by him or occurred days after the rape and kidnapping. . . . The gun testimony had no impact on these convictions. . . . Additionally, we have already reversed appellant's conviction for aggravated burglary. . . . Thus appellant cannot demonstrate prejudice from trial counsel's failure to request the instruction, or from appellate counsel's failure to argue this point, for these convictions.

Appellant's kidnapping conviction is the only remaining conviction we need to consider in this context. In Wade II, we determined that the trial court did not commit lain error by failing to give a limiting instruction regarding the gun testimony for the kidnapping count because we could not say that the outcome of that count clearly would have been different but for that failure. . . . We reached that conclusion based on evidence that appellant forcibly pushed his way through the door and blocked the victim's exit from the apartment. Appellant was also much taller and heavier than his victim. We determined that this evidence was sufficient for a reasonable juror to have concluded that appellant committed kidnapping even without the gun testimony. This same evidence leads us to conclude that there is not a reasonable probability that appellant's kidnapping conviction would have been reversed had appellate counsel raised trial counsel's failure to request a limiting instruction regarding gun testimony. Thus, appellant cannot demonstrate prejudice from appellate counsel's failure to argue this point in connection with the kidnapping conviction.

Appellant has not established a colorable claim of ineffective assistance of appellate counsel.

*Exhibit 15 to Return of Writ.*

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S.

–, –, 130 S.Ct. 1473, 1485 (2010).

> Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of material outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

*Harrington v. Richter,* ── U.S. ──, ──, 131 S.Ct. 770, 788 (2011) (citations omitted).

"[E]stablishing entitlement to relief based on ineffective assistance of counsel under AEDPA is even more difficult than doing so on *de novo* review." *Milstead v. Sherry,* No. 07-15332, 2011 WL 883187, at *3-4 (E.D. Mich. May 17, 2011)(citing *Harrington v. Richter* 131 S.Ct. at 770).

> The standards created by *Strickland* and § 2254(d) are both "highly deferential,". . . and when the two apply in tandem, review is "doubly" so. . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial....Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were unreasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington v. Richter,*131 S.Ct. at 788. Petitioner has failed to meet this standard here.

As discussed by the state appellate court, Petitioner cannot establish prejudice, as that term is defined under *Strickland*, based on his attorney's failure to request a limiting instruction for the firearm evidence as it related to his convictions for robbery, receiving stolen property, failure to comply with an order of a police officer, and possession of cocaine, as these crimes were committed days after the rape and kidnapping charges. As to Petitioner's conviction on kidnapping, the

appellate court concluded Petitioner failed to establish prejudice from his attorney's failure to request a limiting instruction, since ample evidence aside from his alleged use of a firearm established the use of force. Petitioner had forcibly pushed his way into the house, prevented the victim from leaving the house, and was physically much taller and heavier than the alleged victim. *See State v. Wade*, 2008 WL 1723671, at *1-3. These factual findings are presumed to be correct, and the record reflects no reason to disturb these findings here.

Petitioner complains that the prosecutor repeatedly referred to his use of a gun during trial. He refers to a footnote in the state appellate court's decision indicating evidence of force, aside from his use of a gun, was "minimal," and there existed "a substantial likelihood that the jury considered appellant's alleged use of a gun in finding the element of force." *See Traverse; State v. Wade*, 2008 WL 366143, at *7, n.7. This statement to which the Petitioner refers, however, relates to his rape conviction, not to evidence of force involved in the kidnapping charge. *See id.* Petitioner additionally argues, as he did in the state appellate court, that introduction of evidence regarding his use of a gun violated *Ashe v. Swenson*, 397 U.S. at 436. He contends that the state appellate court's decision rejecting his claim is contrary to, or an unreasonable application of *Ashe* and *Dowling*, 493 U.S. at 347. For the reasons detailed by the state appellate court, *see State v. Wade*, 2008 WL 366143, at *3-7, this Court does not agree. Although a jury previously acquitted Petitioner of the use of a firearm, that issue was not an ultimate fact in establishing his convictions in his subsequent trial. Thus, this Court is not persuaded that Petitioner has met his burden of establishing that the state court's application of *Strickland* warrants federal habeas corpus relief.

**WHEREUPON** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**PROCEDURE ON OBJECTIONS**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**Date:  March 14, 2012**                    *s/ Elizabeth A. Preston Deavers*
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**